## State of Connecticut *v.* John A. Almeda (13559)

Peters, C. J., Shea, Callahan, Glass and Covello, Js.

Argued March 7—decision released June 13, 1989

*John R. Williams,* for the appellant (defendant).

*Kevin T. Kane,* assistant state's attorney, with whom, on the brief, was *C. Robert Satti, Sr.,* state's attorney, for the appellee (state).

CALLAHAN J. The defendant was charged in an indictment with the murder of Ronald Wynn on September 19, 1979, in Groton, in violation of General Statutes § 53a-54a (a).[1] As a result of the same incident in which Ronald Wynn was killed, the defendant was also charged in an information with the attempted murder of Ronald's brother, Ricky Wynn, by the use of a firearm in violation of General Statutes §§ 53a-49 (a) (2)[2] and 53a-54a. In 1981, a jury found the defendant guilty of the murder of Ronald Wynn and guilty of attempted manslaughter in the first degree in the case of Ricky Wynn.[3] After the verdicts were returned, the defendant filed motions in arrest of judgment and for a new

---

[1] "[General Statutes] Sec. 53a-54a. MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

[2] General Statutes § 53a-49 (a) (2) provides: "CRIMINAL ATTEMPT: SUFFICIENCY OF CONDUCT; RENUNCIATION AS DEFENSE. (a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[3] The trial court charged the jury that attempted manslaughter in the first degree was a lesser included offense of attempted murder. See General Statutes §§ 53a-49 (a) (2) and 53a-55 (a) (1).

trial, claiming, first, that there was no such crime as attempted manslaughter in the first degree and, second, that a juror who had failed to disclose material information during the voir dire was seated on the trial jury. The court agreed with the defendant in both instances and acting on his motions arrested judgment on the guilty verdict of attempted manslaughter in the first degree, set aside the murder verdict and ordered a new trial.

On the state's appeal of the trial court's action to this court, we held that "attempted manslaughter in violation of § 53a-55 (a) (1)[4] is not a crime cognizable under our law." *State* v. *Almeda,* 189 Conn. 303, 309, 455 A.2d 1326 (1983) (*Almeda I*). At the same time we remanded the case to the trial court for a determination of whether actual juror bias had been demonstrated. Id., 314. After a hearing on that question the trial court articulated a finding of actual juror bias. On the return of the case to this court we concluded that the trial court had not erred by vacating the murder conviction and ordering a new trial as to both the indictment and the information. *State v. Almeda,* 196 Conn. 507, 508–509, 493 A.2d 890 (1985) (*Almeda II*).

At the defendant's second trial the state proceeded on the original murder indictment in the case involving Ronald Wynn's death but in July, 1985, filed a substitute information charging the defendant with assault in the first degree in violation of § 53a-59 (a) (1)[5] rather

---

[4] General Statutes § 53a-55 (a) (1) provides: "MANSLAUGHTER IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person."

[5] General Statutes § 53a-59 (a) (1) provides: "ASSAULT IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

than attempted murder or manslaughter in the case of Ricky Wynn. After a trial that commenced in December, 1987, a jury found the defendant guilty of manslaughter in the first degree in violation of § 53a-55 (a) (1) as a lesser included offense of murder as charged in the indictment and also found him guilty of assault in the first degree as charged in the substitute information. The trial court, thereafter sentenced the defendant to consecutive terms of not less than ten nor more than twenty years on the manslaughter conviction and not less than seven and one-half years nor more than fifteen years on the assault conviction. The defendant has appealed, claiming that: (1) prosecution on the charge of assault in the first degree was barred both by the statute of limitations and by the constitutional prohibition against double jeopardy; (2) the state failed to prove that Ricky Wynn suffered "serious physical injury" within the meaning of § 53a-59 (a) (1); and (3) that the trial court erred by admitting the written statement of a witness for substantive purposes.We find no error.

A brief recitation of the facts that led to the defendant's convictions is necessary in order to place his claims in proper perspective. In September, 1979, the defendant's girlfriend and Ronald and Ricky Wynn were employed at the Electric Boat Company in Groton. Ronald Wynn and the defendant had been friends but shortly before Ronald's death enmity had arisen between them over remarks allegedly made by Ronald to the defendant's girlfriend. As a result, Ronald Wynn and the defendant had an unpleasant encounter on the afternoon of September 18, 1979, when they met at the New Haven Railroad Station as Ronald and Ricky Wynn were boarding a commuter bus to Electric Boat where they worked the 5 p.m. to 1:30 a.m. shift. The defendant did not board the bus but later picked up Ronald Wynn's wife in his automo-

bile at her home and proceeded to Groton, ostensibly to have Ronald's wife pour oil on the troubled waters that separated Ronald Wynn from the defendant and his girlfriend.

The situation deteriorated while the defendant and Ronald's wife were in Groton, however, and events culminated in an altercation between the defendant and Ronald outside the main gate at Electric Boat when Ronald's shift ended. After a physical scuffle in which Ronald apparently bested the defendant, an argument ensued which ended when the defendant shot and killed Ronald Wynn with a single shot from a .22 caliber pistol that he had purchased on the street in New Haven the previous day. Immediately after shooting Ronald Wynn, the defendant twice shot Ricky Wynn as he ran to his brother's aid. One bullet struck Ricky at the left eyebrow and lodged in front of his left ear. The other entered his neck and shattered on impact with his cervical spine. The defendant was arrested almost immediately thereafter as he was about to leave the area in his automobile.

I

The defendant first claims that his prosecution for assault in the first degree in violation of § 53a-59 (a) (1) arising from the shooting of Ricky Wynn was barred by the statute of limitations, General Statutes § 54-193 (b),[6] because the substitute information charging him with that crime was not filed until July 10,

---

[6] General Statutes § 54-193 (b) provides in pertinent part: "LIMITATION OF PROSECUTIONS FOR VARIOUS OFFENSES. . . .

"(b) No person may be prosecuted for any offense, except a capital felony, a class A felony or a violation of section 53a-54d, for which the punishment is or may be imprisonment in excess of one year, except within five years next after the offense had been committed. No person may be prosecuted for any other offense, except a capital felony, a class A felony or a violation of section 53a-54d, except within one year next after the offense has been committed. . . ."

1985, more than five years after the shooting on September 19, 1979. The state maintains, however, that the original information charging the defendant with attempted murder tolled the statute of limitations and permitted prosecution on the substitute information.

The statute of limitations, General Statutes § 54-193 (b) provides in pertinent part that: "No person may be prosecuted for any offense . . . for which the punishment is or may be imprisonment in excess of one year, except within five years next after the offense has been committed." At the core of the limitations doctrine is notice to the defendant. *United States* v. *Gengo,* 808 F.2d 1, 3 (2d Cir. 1986). Its principal purpose is to ensure "that a defendant receives notice, within a prescribed time, of the acts with which he is charged, so that he and his lawyers can assemble the relevant evidence [to prepare a defense] before documents are lost [and] memor[ies] fade . . . ." *United States* v. *O'Neill,* 463 F. Sup. 1205, 1208 (E.D. Pa. 1979); *United States* v. *Gengo,* supra; *United States* v. *Grady,* 544 F.2d 598, 601 (2d Cir. 1976); *United States* v. *Panebianco,* 543 F.2d 447, 454 n.6 (2d Cir. 1976), cert. denied sub nom. *Anatala* v. *United States,* 429 U.S. 1103, 97 S. Ct. 1128, 51 L. Ed. 2d 553 (1977); *United States* v. *Lytle,* 677 F. Sup. 1370, 1376 (N.D. Ill. 1988). If, therefore, the facts underlying a superseding information substituting a different charge in a continuing prosecution are substantially similar to the facts underlying a timely filed information, the main purpose of the statute of limitations has been fulfilled, i.e., timely notice to the defendant of the factual allegations against which he will be required to defend. *United States* v. *Grady,* supra; *United States* v. *Panebianco,* supra, 454; *United States* v. *Lytle,* supra; *United States* v. *O'Neill,* supra, 1207; *People* v. *Gallo,* 54 Ill. 2d 343, 349–50, 297 N.E.2d 569 (1973). If that aim is accomplished, a previously filed information may toll the stat-

ute of limitations. *United States* v. *Grady,* supra; *State* v. *Saraceno,* 15 Conn. App. 222, 239–40, 545 A.2d 1116 (1988). To ascertain if an information tolls the statute to allow the filing of a substitute information after the limitations period has passed it must be determined whether the substitute information "broaden[s] or substantially amend[s] the charges made in the first [information]." *United States* v. *Grady,* supra, 602; *United States* v. *Gengo,* supra; *United States* v. *Friedman,* 649 F.2d 199, 203 (3d Cir. 1981); *United States* v. *Panebianco,* supra, 454; *United States* v. *Lytle,* supra; *State* v. *Saraceno,* supra. If it does not, then the defendant has not been called upon to address any factual allegations by the state beyond those already charged and the substitute information is not time barred. *United States* v. *Elliott,* 849 F.2d 554, 561 (11th Cir. 1988); *United States* v. *Gerstner,* 548 F. Sup. 348, 349 (S.D.N.Y. 1982); *United States* v. *O'Neill,* supra, 1207; *State* v. *Saraceno,* supra, 240.

Here the factual allegations underlying the substitute information charging the defendant with assault in the first degree in the shooting of Ricky Wynn, were identical to the facts underlying the original information charging the defendant with the attempted murder of Ricky Wynn. The defendant therefore was not called upon, at his trial on the substitute information, to answer for any activities that he had not been required to defend against in his first trial on the original information. Moreover, in our decision finding no error in the trial court's arrest of judgment on the attempted manslaughter conviction, which was published within the period of limitation, we explicitly indicated that on a second trial the defendant could be prosecuted on the charge of assault in the first degree for the shooting of Ricky Wynn. *Almeda I,* supra, 309–10.

Under the circumstances of this case, therefore, we conclude that the substitute information on the charge of assault in the first degree was not time barred so long as the defendant was not significantly prejudiced by the delay in the filing. *United States* v. *Panebianco,* supra, 454. The defendant failed to point out any prejudice occasioned by the substitute information. Nor is that surprising. It is obvious that from the date of his arrest, the defendant was aware of the factual allegations against which he would have to defend in regard to his assault on Ricky Wynn, whether he was ultimately charged with attempted murder or assault in the first degree. The substitute information, not having changed those factual allegations nor having occasioned any significant prejudice to the defendant, is not time barred. *State* v. *Saraceno,* supra.

The defendant also claims that his prosecution on the charge of assault in the first degree is foreclosed by principles of double jeopardy.[7] This court "allude[d] to" the issue of double jeopardy in *Almeda I,* supra, 309–10, and indicated that it did not bar the trial of the defendant on that charge. We do not, however, have to reach the merits of the defendant's double jeopardy claim because he " 'proceeded to trial, verdict and judgment without raising [a double jeopardy] claim.' [*State* v. *Jones,* 166 Conn. 620, 630, 353 A.2d 764 (1974)]." *State* v. *Price,* 208 Conn. 387, 390, 544 A.2d 184 (1988). " '[I]n so doing he impliedly waived the defense of double jeopardy, and, therefore, that issue [is] not before us for determination on the merits.' [*State* v. *Jones,* supra]." Id.; *United States* v. *Bascaro,* 742 F.2d 1335, 1365 (11th Cir. 1984); *Grogan* v. *United States,* 394 F.2d 287, 289 (5th Cir. 1967), cert. denied, 393 U.S. 830, 89 S. Ct. 97, 21 L. Ed. 2d 100 (1968).

---

[7] Federal contitutional guarantees against double jeopardy were made applicable to the states through the fourteenth amendment. *Benton* v. *Maryland,* 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969).

## II

The defendant next claims that the state failed to prove beyond a reasonable doubt that Ricky Wynn suffered a "serious physical injury" within the meaning of General Statutes §§ 53a-59 and 53a-3 (4)[8] when he was shot by the defendant. He contends, therefore, that because the state failed to prove an essential element of the crime of assault in the first degree the trial court erred when it denied his motions to acquit him of that charge.

"Serious physical injury" is defined by § 53a-3 (4), for the purpose of § 53a-59, as "physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ." It is undisputed that the victim was shot in the face and neck by the defendant. As previously indicated, one of the bullets entered near his left eyebrow and came to rest by his left ear near his jaw. The other bullet entered his lower neck where it shattered on impact with his cervical spine and lodged against the spine. Immediately after the shooting the victim was transported by ambulance from the scene of the crime to the hospital where the first bullet was removed by surgery with the use of a local anesthetic. After consultation with a neurosurgeon, however, it was decided that because of the risk involved in extracting the second bullet it would not be removed. The victim's wound,

---

[8] General Statutes § 53a-3 (4) provides: "DEFINITIONS. Except where different meanings are expressly specified, the following terms have the following meanings when used in this title . . . .

"(4) 'Serious physical injury' means physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ."

therefore, was simply cleaned and sutured and he was well enough to be discharged from the hospital the following day.

The defendant points out that the only expert medical testimony in the case, that of the victim's treating physician, failed to demonstrate that the victim had "suffered a substantial risk of death or serious disfigurement or serious impairment of health or serious loss or impairment of the function of any bodily organ." He maintains therefore that his motions for acquittal should necessarily have been granted by the trial court. We disagree.

The victim testified that he had been "laid up" and out of work for approximately one year after he was shot. He also testified at the second trial, nearly eight years after the shooting, that he was still having problems and significant pain on a daily basis and that he still felt "lousy" upon awakening in the morning. Further, the wound to the neck left a scar and the bullet remained in the back of his neck where the victim could feel it with his hand. Under the circumstances, whether Ricky Wynn suffered a "serious physical injury" was a question of fact for the jury. *State* v. *Miller,* 202 Conn. 463, 489, 522 A.2d 249 (1987); *State* v. *Rossier,* 175 Conn. 204, 207, 397 A.2d 110 (1978); *State* v. *Jeustiniano,* 172 Conn. 275, 281, 374 A.2d 209 (1977); *State* v. *McCulley,* 5 Conn. App. 612, 615, 501 A.2d 392 (1985). "In reviewing the sufficiency of the evidence concerning this element of assault in the first degree, our task is to construe the evidence in the light most favorable to sustaining the jury's verdict, and then to determine whether any rational trier of fact could have found that the harm suffered rose to the level of a 'serious physical injury' under the statute. *State* v. *Rossier,* supra; *State* v. *Jeustiniano,* supra, 281–82; *State* v. *McCulley,* supra. We cannot substitute our judgment for that of the jury. *State* v. *Rodriquez,* [200 Conn. 685,

693, 513 A.2d 71 (1986)]. Despite the difficulty of drawing a precise line as to where 'physical injury' leaves off and 'serious physical injury' begins, in light of [Ricky's testimony] concerning the extent of [his] injuries, we cannot say as a matter of law that the jury could not reasonably have found that he suffered 'serious physical injury.' *State* v. *Rossier,* supra; *State* v. *Jeustiniano,* supra, 282; *State* v. *McCulley,* supra." *State* v. *Miller,* supra, 489. The trial court, therefore, did not err in denying the defendant's motions for acquittal.

### III

Finally, the defendant claims that the trial court erred when it allowed into evidence a written, signed, but unsworn statement given by a witness, Helen Martinez, to Officer Merrit D'Amico of the Groton police department on September 20, 1979, the day after the shooting. In her statement Martinez related that on the night of September 18, 1979, in a bar across the street from Electric Boat she had heard the defendant "[tell] Ronnie Wynn that, if he touched his old lady, he was gonna get him" and that after Wynn left the bar, the defendant told her that if Wynn touched his "old lady" he would kill him.

At trial, Martinez testified and denied having mentioned such threats when she gave her statement to D'Amico. Thereafter the trial court, over the defendant's objection, allowed Martinez' statement to be admitted as substantive evidence of the defendant's guilt. The defendant contends that the trial court erred in so doing. In a three-pronged argument the defendant contends that Martinez' statement was not admissible under *State* v. *Whelan,* 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986), because it was unsworn, that the statement had been excluded in his first trial and that

ruling constituted the "law of the case," and that the admission of the statement violated the ex post facto prohibitions of article I, § 9 and 10 of the United States constitution. We disagree.

Although the prior inconsistent statement admitted for substantive purposes in *State* v. *Whelan,* supra, happened to be sworn, our holding in that case did not impose an oath as a requirement for the admission of such statements. Rather, we adopted "a rule allowing the substantive use of prior written inconsistent statements, signed by the declarant, who has personal knowledge of the facts stated, when the declarant testifies at trial and is subject to cross-examination." Id., 753; *State* v. *Ruiz,* 202 Conn. 316, 329–30 n.3, 521 A.2d 1025 (1987); *State* v. *Wilson,* 17 Conn. App. 97, 99, 550 A.2d 21 (1988); *State* v. *Green,* 16 Conn. App. 390, 397, 547 A.2d 916 (1988). Under the criteria established in *State* v. *Whelan,* supra, therefore, Martinez' prior inconsistent statement was admissible. This claim of the defendant consequently is without merit.

The defendant next contends that because Martinez' statement had been excluded from evidence at his first trial in 1981, that ruling was the "law of the case" and the trial court erred in admitting it at his second trial. This claim also is without merit. The defendant's first trial was completed prior to our decision in *State* v. *Whelan,* supra. The defendant's second trial was commenced some sixteen months after *State* v. *Whelan,* supra, was decided. Under the rules of evidence extant at the time of the defendant's first trial, the trial court determined that Martinez' statement was inadmissible. At the time of the defendant's second trial, however, *State* v. *Whelan,* supra, had been decided and the trial court ruled that Martinez' statement was admissible for substantive purposes.

The change in the law of evidence wrought by *State v. Whelan,* supra, patently prompted the trial court to deviate from the previous evidentiary ruling of the initial trial court. This was not error. "[I]t is well established that a trial judge need not follow the decisions of another judge made at an earlier stage of the proceedings. *Breen* v. *Phelps,* 186 Conn. 86, 439 A.2d 1066 (1982); *Santore* v. *Kleinberger,* 115 Conn. 631, 638, 163 A. 107 (1932)." *State* v. *Rogers,* 199 Conn. 453, 459, 508 A.2d 11 (1986). "[T]he law of the case is not an inflexible principle and in a proper situation a judge may modify or depart from an interlocutory ruling of another coordinate magistrate, in whole or in part. *Breen* v. *Phelps,* supra, 98–100."Id.; *Barnes* v. *Schlein,* 192 Conn. 732, 734, 473 A.2d 1221 (1984).

The defendant lastly claims that the admission of Martinez's statement violated the ex post facto prohibitions of the federal constitution. We disagree. The change in the law of evidence effected by *State* v. *Whelan,* supra, "did not (1) attach criminality to any act previously committed; (2) aggravate any crime theretofore committed; (3) provide greater punishment than was prescribed at the time of the commission of the crime; or (4) alter the degree or lessen the amount or measure of the proof necessary to sustain a conviction when the crime was committed." *Murphy* v. *Sowders,* 801 F.2d 205, 209 (6th Cir. 1986), cert. denied, 480 U.S. 941, 107 S. Ct. 1593, 94 L. Ed. 2d 782 (1987); *State* v. *Belk,* 759 S.W.2d 257, 259 (Mo. App. 1988). Rather, *State* v. *Whelan,* supra, removed existing strictures upon the admissibility of evidence and thereby "merely alter[ed] the procedure of [the] trial." Murphy v. *Sowders,* supra. Laws that change the elements or facts necessary to establish guilt are substantive in nature and as such are subject to ex post facto prohibition whereas mere procedural changes are not subject to

such prohibition. *Miller* v. *Florida,* 482 U.S. 423, 433, 107 S. Ct. 2446, 96 L. Ed. 2d 351 (1987); *Dobbert* v. *Florida,* 432 U.S. 282, 292–93, 97 S. Ct. 2290, 53 L. Ed. 2d 344 (1977); *Watson* v. *Estelle,* 859 F.2d 105, 107 (9th Cir. 1988).

The rules of evidence are procedural. *State* v. *Lorain,* 141 Conn. 694, 701, 109 A.2d 504 (1954); *State* v. *Leonard,* 151 Ariz. 1, 4, 725 P.2d 493 (1986); *State* v. *Clark,* 756 S.W.2d 565, 570 (Mo. App. 1988); *State* v. *Moutray,* 728 S.W.2d 256, 263 (Mo. App. 1987); *Tumlinson* v. *State,* 757 S.W.2d 440, 442–43 (Tex. App. 1988). "[Procedural] regulations of the mode in which the *facts* constituting guilt may be placed before the jury, can be made applicable . . . without reference to the date of the commission of the offence charged." (Emphasis added.) *Hopt* v. *Utah,* 110 U.S. 574, 590, 4 S. Ct. 202, 28 L. Ed. 262 (1884). A change in the rules of evidence, therefore, after an offense, but before the time of trial, that allows the admission of evidence previously inadmissible does not violate the prohibition against ex post facto laws; *Beazell* v. *Ohio,* 269 U.S. 167, 170–71, 46 S. Ct. 68, 70 L. Ed. 216 (1925); *Thompson* v. *Missouri,* 171 U.S. 380, 387, 18 S. Ct. 922, 43 L. Ed. 204 (1898); *State* v. *Belk,* supra; *State* v. *Stevens,* 757 S.W.2d 229, 232 (Mo. App. 1988); even though it may work to the disadvantage of the accused. *Dobbert* v. *Florida,* supra, 293. "[A] change in a statute after the alleged crime which allowed the hearsay statements of a child victim of sexual abuse to be admitted . . . at trial when previously such a statement was inadmissible was not a prohibited ex post facto law because it simply authorized the introduction of additional evidence of guilt." *State* v. *Stevens,* supra. "[A] state could regulate, without *ex post facto* implications, the facts which 'may be placed before the jury.' " *Murphy* v. *Sowders,* supra, 210. The constitutional prohibition

against ex post facto laws does not apply to changes in the rules of evidence "whether statutory or court made." *State* v. *Steelman,* 120 Ariz. 301, 318, 585 P.2d 1213 (1978).

There is no error.

In this opinion the other justices concurred.