******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ROBERT J. MOSBACK
(AC 35173)

Beach, Alvord and Mullins, Js.

*Argued February 4—officially released August 11, 2015*

(Appeal from Superior Court, judicial district of New Britain, geographical area number fifteen, Kahn, J. [motions to suppress, dismiss]; Alander, J. [motion for judgment of acquittal, judgment].)

*David V. DeRosa*, with whom, on the brief, was *Austin B. Johns*, for the appellant (defendant).

*Michele C. Lukban*, senior assistant state's attorney, with whom, on the brief, were *Brian Preleski*, state's attorney, and *Mary Rose Palmese*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

MULLINS, J. The defendant, Robert J. Mosback, appeals from the judgment of conviction, rendered after a jury trial, of operating a motor vehicle while having an elevated blood alcohol content in violation of General Statutes § 14-227a (a) (2) and reckless driving in violation of General Statutes § 14-222 (a). The defendant claims that the trial court improperly denied his motions (1) to suppress evidence of his medical records; (2) for a judgment of acquittal that was based on the alleged insufficiency of the blood test evidence; and (3) to dismiss the reckless driving count, and refused to allow him to present his statute of limitations defense to the jury and refused his request to charge the jury on that issue. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. In the late afternoon and evening of June 26, 2010, the defendant, a police officer with the city of Bristol, consumed multiple alcoholic beverages at two separate gatherings in his neighborhood while off duty. The defendant went home from the second gathering at approximately 8 p.m., and took a two hour nap.

After waking from his nap, the defendant drove to the Bristol Police Department headquarters and reported for his shift. His shift ran from 10:45 p.m. until 6:45 a.m. Shortly after starting his shift, the defendant left the department in his police cruiser and drove eastbound on Riverside Avenue. At the same time, Tammy Forrest was driving her vehicle in the opposite direction, westbound on Riverside Avenue.

As the vehicles were travelling toward one another, the defendant was driving at a high rate of speed and lost control of his cruiser at a bend in the road. He crossed into Forrest's lane and nearly hit her vehicle head-on. After narrowly missing Forrest's vehicle, the defendant crashed his cruiser sideways into a utility pole, causing the pole to break. The crash rendered the defendant unconscious. A short time later, medical personnel arrived and transported the defendant to Saint Francis Hospital and Medical Center in Hartford for treatment.

The defendant was admitted to the hospital at approximately 11:56 p.m. Immediately upon his admission, the medical staff ordered various tests, which was part of the hospital's protocol for trauma patients such as the defendant.

Among the tests performed by the medical staff was an "ETOH" test, which analyzed the defendant's blood alcohol content. At approximately 12:01 a.m., the medical staff drew a sample of the defendant's blood, which was sent to the laboratory for testing.

The blood test was conducted using a Vitros Fusion 5.1 machine. The Vitros machine measured the defendant's blood alcohol content by means of an enzymatic reaction with alcohol dehydrogenase; it then expressed the alcohol content results using a weight of alcohol to volume of blood ratio. The test was completed at approximately 12:45 a.m. The test revealed that the defendant had a serum blood alcohol concentration of 151 milligrams per deciliter.[1] The serum blood alcohol content range for a patient with no alcohol in his system is less than ten milligrams per deciliter. A serum result of 151 milligrams per deciliter translated to a 0.13 percent whole blood alcohol content, which is the measure used to determine legal intoxication. As a result of the defendant's elevated blood alcohol content, the treating physician initially was unable to make an accurate assessment of the defendant's condition, and the defendant was kept at the hospital. The treating physician wrote "alcohol intoxication" under the "clinical impression" section of the emergency physician record. The next morning, the defendant's blood alcohol content fell closer to normal levels, and he was released from the hospital. The defendant's evaluation at the hospital, including his blood test results, was recorded in his medical records. The police later seized the medical records pursuant to a search warrant issued on November 16, 2010.

On November 22, 2010, the state issued a warrant for the defendant's arrest and filed the original information charging the defendant with operating a motor vehicle while under the influence of alcohol in violation of § 14-227a.[2] The arrest warrant affidavit incorporated statements from the defendant's neighbors, which indicated that the defendant had consumed multiple alcoholic beverages on the evening of the crash before beginning his shift. The arrest warrant affidavit also included statements from witnesses to the crash describing the defendant's erratic driving. Finally, the affidavit contained the defendant's hospital blood test result, which showed that his "blood alcohol content was 0.151" on the night of the crash.

The police arrested the defendant on December 2, 2010. On May 29, 2012, the state filed an amended information. In the amended information, the state for the first time clarified that it was charging the defendant with operating his police cruiser while having an elevated blood alcohol content in violation of § 14-227a (a) (2). The state also added, inter alia,[3] a new count of reckless driving in violation of § 14-222 (a).[4]

In the course of the jury trial on these charges, the defendant filed a motion for a judgment of acquittal on the basis of alleged insufficiency of the blood test evidence. The court denied that motion. The defendant was convicted of operating a motor vehicle while having an elevated blood alcohol content and reckless driving.

The court imposed a sentence of six months and thirty days incarceration, execution suspended, followed by two years of probation. This appeal followed. Additional facts will be set forth as necessary.

I

MOTION TO SUPPRESS MEDICAL RECORDS

The defendant claims that the court improperly denied his motion to suppress his medical records. Specifically, the defendant claims that his original attorney, Theodore Wurz, provided ineffective assistance of counsel, in violation of the sixth amendment to the United States constitution, when he provided portions of the defendant's medical records to the police. In particular, he argues that the court should have suppressed his medical records because the disclosure of those records "was premised on [Wurz'] failure to adequately investigate and seek expert assistance in reviewing the medical records before formulating a deeply flawed theory of the criminal case." We are not persuaded.

We first set forth the standard of review for claims relating to a motion to suppress. "Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . . Additionally, we are mindful of our authority to affirm a judgment of a trial court on a dispositive alternate ground for which there is support in the trial court record." (Internal quotation marks omitted.) *State* v. *Pierce*, 67 Conn. App. 634, 638–39, 789 A.2d 496, cert. denied, 260 Conn. 904, 795 A.2d 546 (2002).

The following facts and procedural history are relevant to this claim. Following the accident, the city filed a workers' compensation claim on behalf of the defendant.[5] The city's insurance carrier challenged the claim to the Workers' Compensation Commission on the basis of the defendant's wilful misconduct and intoxication. Due to the challenge to the workers' compensation claim, the city and the department became aware that the defendant's medical records indicated he was intoxicated on the night of June 26, 2010.

On September 29, 2010, after meeting with the chief of the department, a representative from the city, and the defendant's union representative, the defendant resigned from the department. Notwithstanding the defendant's resignation, on the basis of rumors that the defendant had been drinking at neighborhood gatherings prior to his shift, the department suspected that

he had been intoxicated when he crashed his cruiser and continued to investigate his alleged misconduct on the night of June 26, 2010. In particular, the department, the city, and the state's attorney deputized James McGlynn, a detective with the state police, to investigate the accident.

After resigning from the department, the defendant hired Wurz to assist him in rescinding his resignation and to represent him in connection with the department's continued investigation into his alleged misconduct. The defendant and Wurz decided that their defense strategy would be to challenge the validity of the blood test, the results of which they believed had been *released* at 12:01 a.m., a mere five minutes after the defendant was admitted to the hospital.[6] Accordingly, the defendant and Wurz agreed to cooperate with any potential investigation and to challenge the validity of the blood test.

On November 1, 2010, McGlynn, in furtherance of his investigation, contacted Wurz by telephone and requested an interview with the defendant. Wurz told McGlynn that the defendant would not meet with him. Instead, Wurz personally agreed to meet with McGlynn that day without the defendant being present. Wurz also told McGlynn that he possessed copies of the defendant's medical records, which he claimed contained an error that invalidated the test results, namely, the incorrect release time of the test results. At the meeting, Wurz provided McGlynn a copy of portions of the medical records. During that meeting, McGlynn noticed that sections of the medical records were missing and requested that the defendant sign a full release of his medical records. In accordance with McGlynn's requests, the defendant executed two signed authorizations releasing the medical records, one dated November 1, 2010, and another dated November 10, 2010.

Thereafter, McGlynn prepared a search and seizure warrant to obtain a full copy of the defendant's medical records. The search warrant affidavit stated that the defendant had consumed alcohol at neighborhood gatherings prior to his shift, that his reported blood alcohol content at the hospital was 0.151, and that he had signed authorizations to release his medical records. A judge signed the search warrant on November 16, 2010. Thereafter, the police arrested the defendant and charged him with operating a motor vehicle while under the influence of intoxicating liquor.

On May 11, 2012, the defendant obtained new counsel. On May 16, 2012, the defendant filed a motion to suppress his medical records on the ground that the release of those records to the police amounted to a "breach of . . . [the defendant's] attorney-client privilege."[7] After holding a hearing on the motion to suppress, the court, *Kahn, J.*, issued a memorandum of decision in which it denied the motion to suppress on

the grounds that "[i]t was only a matter of time before the authorities would gain access to the medical records in full" and that Wurz had not been ineffective in representing the defendant. The defendant's medical records, which included the blood test results, were entered into evidence at trial.

On appeal, the defendant contends that his medical records should have been suppressed because Wurz "rendered ineffective assistance of counsel by failing to adequately investigate before disclosing privilege[d] medical records to the state police, and doing so without [getting] [the defendant's] informed consent." The state contends, as an alternative ground for affirmance, that "the defendant's sixth amendment right to counsel had not yet attached" when Wurz provided the defendant's medical records to the police. In his reply brief, the defendant responds that his sixth amendment right to counsel had attached when Wurz released his medical records because the police inquiry at that time "was more than a mere investigation but an attempt to build a case against a targeted defendant . . . ." We agree with the state's alternative ground for affirmance.[8]

It is well established that "[a] criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . It is axiomatic that the right to counsel is the right to the effective assistance of counsel." (Citations omitted; internal quotation marks omitted.) *Thiersaint* v. *Commissioner of Correction*, 316 Conn. 89, 100–101, 111 A.3d 829 (2015). "This right attaches only at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment. . . . The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of [the] government and [the] defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the criminal prosecutions to which alone the explicit guarantees of the [s]ixth [a]mendment are applicable. . . . We also have noted that the time of the attachment of the right to counsel under the federal constitution is no different under article first, § 8, of the constitution of Connecticut." (Citations omitted; internal quotation marks omitted.) *State* v. *Pierre*, 277 Conn. 42, 92–93, 890 A.2d 474, cert. denied, 547 U.S. 1197, 126 S. Ct. 2873, 165 L. Ed. 2d 904 (2006).

In the present case, it is undisputed that the state had not charged the defendant with any crime on November 1, 2010, when Wurz provided the defendant's medical records to the police. Additionally, the state had not charged the defendant with any crime at the time he executed a second signed release of his medical records on November 10, 2010. Indeed, the state did not file the original information against the defendant until November 22, 2010. Therefore, criminal proceedings had not commenced, and the defendant's sixth amendment right to counsel had not been triggered when Wurz provided the medical records to the police. See, e.g., *State* v. *Vitale*, 190 Conn. 219, 233, 460 A.2d 961 (1983) (defendant's sixth amendment right to counsel did not attach in period between arrest and filing of information or indictment); *State* v. *Packard*, 184 Conn. 258, 267, 439 A.2d 983 (1981) ("[c]ounsel is required at all lineups and showups *held after the commencement of criminal proceedings* and is not required at the prearraignment stage, including the period from the initial detention to the formal arrest" [emphasis added]). As a result, in the present case the alleged constitutionally ineffective assistance of the defendant's original attorney provided no basis to suppress the medical records. The court, thus, properly denied the defendant's motion to suppress.

## II

### SUFFICIENCY OF BLOOD TEST

Next, the defendant claims that the court improperly denied his motion for a judgment of acquittal because the evidence of his blood test results was "insufficient to establish the element of 'blood alcohol content' in the statutory definition of operating under the influence in violation of General Statutes § 14-227a (a)." Specifically, the defendant argues that the state failed to demonstrate that his blood alcohol content was elevated in terms of the ratio of weight of alcohol to weight of blood, as required by statute, and that evidence that he had an elevated blood alcohol content expressed in terms of weight of alcohol to volume of blood was insufficient. We disagree and conclude that there was sufficient evidence from which the jury reasonably could have determined that the defendant was operating a motor vehicle with a blood alcohol content of 0.08 percent or more by weight, as required by statute.

We begin by setting forth our standard of review. "In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier

of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Jordan*, 314 Conn. 89, 106–107, 101 A.3d 179 (2014). "Due process requires that the state prove each element of an offense beyond a reasonable doubt. . . . It follows that insufficiency of the evidence to support a jury's ultimate findings on each of these elements requires acquittal." (Citation omitted.) *State* v. *Crafts*, 226 Conn. 237, 244, 627 A.2d 877 (1993).

The defendant claims that the blood test results were insufficient for the jury to conclude that he had an "elevated blood alcohol content" as defined by § 14-227a (a) (2). The defendant argues that, because the Vitros machine measured his blood alcohol content with a weight of alcohol to volume of blood basis, rather than with a weight of alcohol to weight of blood basis, the evidence was insufficient to support his conviction under § 14-227a (a) (2). We disagree.

Section 14-227a (a) provides in relevant part that "[a] person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor . . . if such person operates a motor vehicle . . . (2) while such person has an elevated blood alcohol content. . . ." "Elevated blood alcohol content" is defined as "a ratio of alcohol in the blood of such person that is eight-hundredths of one per cent or more of alcohol, *by weight* . . . ." (Emphasis added.) General Statutes § 14-227a (a) (2).

Here, to establish that the defendant's blood alcohol content was greater than 0.08 percent, the state introduced into evidence blood test results that expressed the defendant's blood alcohol content using a weight of alcohol to volume of blood ratio, instead of a weight of alcohol to weight of blood ratio. This court and our Supreme Court have held, in the context of Breathalyzer tests, that test results reporting blood alcohol content by using a ratio of weight of alcohol to volume of breath are sufficient to demonstrate that the defendant had an "elevated blood alcohol content" as defined by § 14-227a (a) (2). See, e.g., *Stash* v. *Commissioner of Motor Vehicles*, 297 Conn. 204, 211, 999 A.2d 696 (2010) (Intoxilyzer test results expressed in weight of alcohol to volume of breath basis, rather than weight of alcohol to weight of blood basis, sufficient to show operator had elevated blood alcohol content as defined by General Statutes § 14-227b [o] [1]);[9] *State* v. *Pilotti*, 99 Conn. App. 563, 571–79, 914 A.2d 1067 (sufficient evidence that defendant operated motor vehicle with blood alcohol greater than 0.08 percent by weight despite Breathalyzer test result reporting amount of alcohol measured by volume of breath rather than measured by weight of breath), cert. denied, 282 Conn. 903, 919 A.2d 1037

(2007).

Thus, *Stash* and *Pilotti* instruct that the statutory requirement regarding the amount of alcohol in one's blood being eight-hundredths of 1 percent or more of alcohol, by weight, may be satisfied by a measuring metric of weight to volume.[10] We see no reason to diverge from this principle in this case, where the state introduced into evidence blood test results that expressed the defendant's blood alcohol content in terms of weight of alcohol to volume of blood.

In the present case, the blood test results showed that the defendant had a serum blood alcohol content of 151 milligrams per deciliter when he was admitted to the hospital. After the test results were introduced into evidence, Robert H. Powers, the director of the state toxicology laboratory, testified that the measurement translated to a whole blood alcohol content of approximately 0.13 percent.[11] Powers then estimated that, because the defendant metabolized some of the alcohol that was in his system between the time of the crash and when he arrived at the hospital, the defendant's blood alcohol content was 0.139 percent when he crashed his cruiser into a utility pole. That blood alcohol content clearly was greater than the legally permissible limit of 0.08 percent. This was strong evidence that the defendant had an elevated blood alcohol content when he drove his police cruiser on the night of this incident.

Although the defendant cross-examined the state's witnesses aggressively, offered his own expert to undermine the reliability of the test results, and criticized the validity of the blood test results at closing argument, once the blood test results were admitted into evidence, it was within the province of the jury to assess the weight of that evidence. See *State* v. *Kirsch*, 263 Conn. 390, 409, 820 A.2d 236 (2003) ("the defendant's challenges to the methodology [of an alcohol dehydrogenase based blood test] affected the weight of the testimony and not its reliability"). On the evidence presented here, the jury easily could have concluded that the cumulative force of the evidence proved beyond a reasonable doubt that the defendant had an elevated blood alcohol content, as defined by § 14-227a (a) (2), when he operated his police cruiser on the night of June 26, 2010.

### III

### STATUTE OF LIMITATIONS

Finally, the defendant claims that the court improperly (1) denied his motion to dismiss the reckless driving count because the state brought this charge beyond the statute of limitations and (2) refused to allow him to present that ground to the jury. We disagree.

1

## Motion to Dismiss

The defendant claims that the court, *Kahn, J.*, improperly denied his motion to dismiss the reckless driving count. The defendant argues that "[t]he statute of limitations was not tolled by the state's original November 22, 2010 information, as the charge of reckless driving is insufficiently related to the original charge of operating a motor vehicle [while] under the influence of alcohol . . . ." We disagree.

The following facts and procedural history are relevant to this claim. On June 4, 2012, the defendant moved to dismiss the counts added in the amended information on the ground that they were barred by the applicable statute of limitations. On July 11, 2012, the court denied the defendant's motion to dismiss as to the reckless driving charge.

In its memorandum of decision, the court stated that the allegations underlying the reckless driving count were "identical to the facts underlying the original information charging the defendant with operating a motor vehicle [while] under the influence." The court specified that the warrant affidavits included allegations about the reckless manner that the defendant was driving on the night of the crash and, therefore, "the defendant was aware, from the date of his arrest, of the factual allegations against which he would have to defend in regard to the crash on June 26, 2010." According to the court, "[t]he factual allegations relating to the manner in which the defendant was driving, speed and direction, [were] also included in the affidavits. The affidavits also contained statements from witnesses on the scene relating to the alleged reckless manner in which the defendant operated the vehicle prior to the crash." Finally, the court acknowledged that "[w]hile the elements of the offenses are slightly different, the factual allegations and evidence in support of those charges is similar. While there is an additional exposure to the defendant, that exposure is not impermissible or prejudicial under the circumstances of this case." The record supports the court's conclusions.

"The standard of review governing the defendant's claim that the trial court improperly failed to grant his motion to dismiss a charge on the ground that the statute of limitations had passed is well settled. Our review of the trial court's legal conclusions and resulting denial of the defendant's motion to dismiss is de novo." *State v. Golodner*, 305 Conn. 330, 357, 46 A.3d 71 (2012). Practice Book § 36-17 provides in relevant part: "If the trial has not commenced, the prosecuting authority may amend the information, or add additional counts, or file a substitute information. . . ." "The general rule is that, although the prosecution has broad authority to file an amended or substitute information prior to trial . . . [General Statutes § 54-193 (c)] provides that no person

may be prosecuted except within one year next after the offense has been committed. . . . The issuance of an arrest warrant tolls the running of the statute of limitations, provided that it is executed without unreasonable delay and with due diligence. . . . When the state files an amended or substitute information after the limitations period has passed, however, a timely information will toll the statute of limitations only if the amended or substitute information does not broaden or substantially amend the charges made in the timely information. . . . Although notice is the touchstone of the analysis in determining whether an amended or substitute information substantially broadens or amends the timely charges . . . factors to assist in this determination are whether the additional pleadings allege violations of a different statute, contain different elements, rely on different evidence, or expose the defendant to a potentially greater sentence." (Citations omitted; internal quotation marks omitted.) *State* v. *Golodner*, supra, 357–58.

Pursuant to § 54-193 (c),[12] the charged violation of § 14-222 (a) was subject to a one year limitations period because it was not punishable by a term of imprisonment of more than one year. Here, because the offense occurred on June 26, 2010, and the state did not file the amended information until May 29, 2012, there is no dispute that the state failed to charge the defendant with reckless driving within the applicable one year statute of limitations. Consequently, we must address whether the "arrest warrant and [original] information . . . served to toll the running of the statute of limitations" to permit the state to add the reckless driving charge. *State* v. *Jennings*, 101 Conn. App. 810, 821, 928 A.2d 541 (2007).

In the present case, in the original information, the state charged the defendant with violating § 14-227a. There are two distinct ways in which a defendant could violate § 14-227a. Indeed, this court has explained that "subdivisions (1) and (2) of . . . § 14-227a (a) . . . are known, respectively, as the behavioral and per se subdivisions of that statute. . . . The behavioral subdivision prohibits a person from operating a motor vehicle while under the influence of intoxicating liquor. General Statutes § 14-227a (a) (1). The per se subdivision prohibits a person from operating a motor vehicle while he has a blood alcohol content of 0.08 percent or greater. General Statutes § 14-227a (a) (2)." (Citation omitted.) *State* v. *Sunila*, 98 Conn. App. 847, 849, 911 A.2d 773 (2006).

The original information in this case did not specify the subdivision of § 14-227a (a) under which the state would proceed with this prosecution. Thus, when the state had filed the original information, it was possible that the state would elect to prosecute the defendant for violating § 14-227a (a) (1) for operating his police cruiser while under the influence of an intoxicating

liquor.[13] Indeed, "[i]n Connecticut, it is sufficient for the state to set out in the information the statutory name of the crime with which the defendant is charged, leaving to the defendant the burden of requesting a bill of particulars more precisely defining the manner in which the defendant committed the offense." (Internal quotation marks omitted.) *State* v. *Walton*, 34 Conn. App. 223, 227, 641 A.2d 391, cert. denied, 230 Conn. 902, 644 A.2d 916 (1994). Stated differently, the defendant had to be prepared to defend against either or both subdivisions until further clarification was obtained. In this case, the defendant never asked the state to identify the precise way in which he violated § 14-227a (a) and, therefore, he was on notice that he was being charged with both statutory alternative theories available under that subsection.

In prosecutions for violations of § 14-227a (a) (1), direct evidence that the driver had an elevated blood alcohol content is not necessary or required for the state to prove that a driver operated a motor vehicle while under the influence of an intoxicating liquor. See *State* v. *Howell*, 98 Conn. App. 369, 377, 908 A.2d 1145 (2006) (evidence that driver appeared impaired, spoke with slurred speech, failed field sobriety tests, and refused to submit to breath test sufficient for jury to find driver violated § 14-227a [a] [1]). To demonstrate that a defendant violated § 14-227a (a) (1), the state is required to show that, as a result of the consumption of intoxicating liquor, the defendant "had become so affected in his mental, physical or nervous processes that he lacked to an appreciable degree the ability to function properly in relation to the operation of his vehicle." (Internal quotation marks omitted.) *State* v. *Morelli*, 293 Conn. 147, 154, 976 A.2d 678 (2009).

This court consistently has held that evidence of erratic driving supports a jury's guilty verdict for violations of § 14-227a (a) (1). See, e.g., *State* v. *Fontaine*, 134 Conn. App. 224, 228, 40 A.3d 331 (conviction of violation of § 14-227a [a] [1] supported by evidence that defendant "drove in an erratic manner, crossing over the white line on the right side of the roadway on three occasions"), cert. denied, 304 Conn. 926, 41 A.3d 1051 (2012); *State* v. *Monahan*, 125 Conn. App. 113, 120, 7 A.3d 404 (2010) (conviction of violation of § 14-227a [a] [1] supported by evidence that driver "drove [vehicle] onto the right curb five to seven times and into the wrong lane three times, almost hitting four cars"), cert. denied, 299 Conn. 926, 11 A.3d 152 (2011); *State* v. *Coyne*, 118 Conn. App. 818, 826–27, 985 A.2d 1091 (2010) ("testimony describing the defendant's erratic driving, including drifting between travel lanes, turning without signaling, driving over a traffic cone, failing to maintain a consistent speed and making a U-turn despite being familiar with the area" supported conviction of violation of § 14-227a [a] [1]).

Here, the arrest warrant included witness statements indicating that, after consuming alcohol on the night of June 26, 2010, the defendant drove his police cruiser in an erratic manner and crashed into a utility pole. The amended information charging the defendant with reckless driving relied on those very facts pertaining to the manner in which the defendant drove. Significantly, the date, time, and place that the reckless driving was alleged to have occurred were identical to the date, time, and place that the defendant was alleged to have operated his police cruiser while under the influence of alcohol. See *State* v. *Almeda*, 211 Conn. 441, 447–48, 560 A.2d 389 (1989) (prosecution on substitute information charging assault in first degree not time barred where factual allegations were identical to those underlying original information charging attempt to commit murder).

The factual allegations underlying the amended information, thus, were "substantially similar to the facts underlying" the original information; id., 446; and did not "broaden or substantially amend the charges made in the first information." *State* v. *Jennings*, supra, 101 Conn. App. 818.[14] The evidence in the record, thus, demonstrates that the defendant had "timely notice . . . of the factual allegations against which he [would] be required to defend"; (internal quotation marks omitted) *State* v. *Almeda*, supra, 211 Conn. 446; and supports the court's conclusion that "the defendant was aware, from the date of his arrest, of the factual allegations against which he would have to defend in regard to the crash on June 26, 2010."[15] Therefore, the court properly denied the defendant's motion to dismiss the reckless driving count.

2

Jury Charge

Next, the defendant claims that the court, *Alander*, *J.*, improperly denied his requests to raise his statute of limitations defense at trial and to include an instruction on the statute of limitations in the jury charge. We are not persuaded.

"A challenge to the validity of jury instructions presents a question of law over which [we have] plenary review." (Internal quotation marks omitted.) *State* v. *Santiago*, 305 Conn. 101, 191, 49 A.3d 566 (2012). It is well established that "[c]entral to a defendant's right to a fair trial is the right to have *issues of fact and credibility* decided by the jury." (Emphasis added; internal quotation marks omitted.) *State* v. *Diaz*, 86 Conn. App. 244, 253, 860 A.2d 791 (2004), cert. denied, 273 Conn. 908, 870 A.2d 1081 (2005). Nonetheless, "[t]he court shall decide all issues of law and all questions of law arising in the trial of criminal cases. . . ." General Statutes § 54-89; see also *State* v. *Marx*, 78 Conn. 18, 28, 60 A. 690 (1905) ("[i]n jury trials it is the province

of the court to decide questions of law, and of the jury to decide questions of fact"). Indeed, "[t]he principal function of a jury charge is to assist the jury in applying the law correctly *to the facts which* [*it*] *might find to be established* . . . ." (Emphasis added; internal quotation marks omitted.) *State* v. *Wright,* 149 Conn. App. 758, 772, 89 A.3d 458, cert. denied, 312 Conn. 917, 94 A.3d 641 (2014). Significantly, it is well established that "[t]he interpretation of pleadings is always a question of law for the court . . . ." (Internal quotation marks omitted.) *Torres* v. *Carrese,* 149 Conn. App. 596, 613, 90 A.3d 256, cert. denied, 312 Conn. 912, 93 A.3d 595 (2014).

In the present case, the court permitted the state to charge the defendant with additional counts beyond the statutorily permitted period because the new information did not "broaden or substantially amend the charges made in the timely information." *State* v. *Golodner,* supra, 305 Conn. 357. That determination required a comparison between the facts underlying the amended information and the facts underlying the original information; see *State* v. *Jennings,* supra, 101 Conn. App. 821; which was a legal determination outside of the jury's purview. See, e.g., *Watts* v. *Chittenden,* 301 Conn. 575, 582, 22 A.3d 1214 (2011) (in a civil action, "[t]he question of whether a party's claim is barred by the statute of limitations is a question of law" [internal quotation marks omitted]).

Here, in denying the motion to dismiss, the court, *Kahn, J.,* determined that "the factual allegations underlying the [reckless driving count in the] substitute information . . . are identical to the facts underlying the original information charging the defendant with operating a motor vehicle under the influence." Such a determination was a conclusion of law and, therefore, inappropriate for the jury's consideration. As a result, under the circumstances of this case,[16] the court, *Alander, J.,* properly denied both the defendant's request to raise the statute of limitations defense before the jury and his request to instruct the jury on his statute of limitations defense.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] " 'Serum' is the liquid portion of the blood separated from the solids and a serum blood alcohol content is on average 16 percent higher than a whole blood alcohol content. See 1 E. Fitzgerald, Intoxication Test Evidence (2d Ed. 1995) § 19:3, p. 19-10, and § 19:16, fig. 29." *State* v. *Kirsch,* 263 Conn. 390, 395 n.5, 820 A.2d 236 (2003). At trial, Robert H. Powers, the director of the state toxicology laboratory, testified that a serum result of 151 milligrams per deciliter translates to a 0.13 percent whole blood alcohol level.

[2] General Statutes § 14-227a provides in relevant part: "(a) Operation while under the influence or while having an elevated blood alcohol content. No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle (1) while under the influence of intoxicating liquor or any drug or both, or (2) while such person has an elevated blood alcohol content. . . ."

[3] The amended information also included new charges of reckless endan-

germent in the first degree in violation of General Statutes § 53a-63, and carrying a firearm while under the influence of intoxicating liquor in violation of General Statutes § 53-206d (a). The court dismissed the carrying a firearm while under the influence count, and the defendant was acquitted of reckless endangerment.

[4] General Statutes § 14-222 (a) provides in relevant part: "No person shall operate any motor vehicle upon any public highway of the state, or any road of any specially chartered municipal association . . . recklessly, having regard to the width, traffic and use of such highway [or] road . . . the intersection of streets and the weather conditions. The operation of a motor vehicle upon any such highway [or] road . . . at such a rate of speed as to endanger the life of any person other than the operator of such motor vehicle . . . shall constitute a violation of the provisions of this section. . . ."

[5] Although ordinarily, employees file workers' compensation claims on their own behalf, in this case the record indicates that the city filed a workers' compensation claim on behalf of the defendant.

[6] On appeal, the defendant does not challenge the validity of the blood test on this basis.

[7] On May 16, 2012, the defendant filed a separate motion to suppress in which he claimed that the blood test results were inadmissible because they lacked scientific reliability, the state was unable to demonstrate a proper chain of custody, and the blood sample was obtained in a manner that failed to comply with applicable regulations. The court denied that motion, and the defendant does not challenge that ruling in this appeal.

[8] It is appropriate for this court to consider the state's claim as alternative grounds for affirmance because it included "[a]ny other alternate ground for affirmance" in its preliminary statement of issues and raised the claim in its principal brief to this court, affording the defendant an adequate opportunity to respond, which he did in his reply brief. See *Gerardi* v. *Bridgeport*, 294 Conn. 461, 466, 985 A.2d 328 (2010).

[9] "Elevated blood alcohol content" is defined by § 14-227b (o) (1), which governs the suspension of driver's licenses, as "a ratio of alcohol in the blood of such person that is eight-hundredths of one per cent or more of alcohol, by weight . . . ." This definition is identical to the definition of "elevated blood alcohol content" set forth in § 14-227a (a) (2).

[10] We do not suggest that a blood alcohol content measured with a weight to volume ratio is the scientific equivalent of a measurement expressed with a weight to weight ratio. Nonetheless, it is well established that a blood alcohol content measured with a weight to volume ratio is admissible and competent evidence to prove that a defendant had an elevated blood alcohol content as defined by § 14-227a (a) (2). See, e.g., *State* v. *Pilotti*, supra, 99 Conn. App. 571–79.

[11] Powers explained that serum blood alcohol levels tend to be higher by a factor of 1.16 than the whole blood alcohol content, which is the measurement required by § 14-227a (a) (2). Thus, for the purposes of trial and to conform to the statutory requirements of § 14-227a, Powers converted the defendant's serum blood alcohol content to a whole blood alcohol content of 0.13 percent. See footnote 1 of this opinion; see also *State* v. *Kirsch*, 263 Conn. 390, 403–409, 820 A.2d 236 (2003) (hospital blood test results initially reported in serum blood alcohol content, and converted by expert at trial to whole blood alcohol content equivalent, admissible to demonstrate that defendant operated motor vehicle while under influence of intoxicating liquor).

[12] General Statutes § 54-193 (c) provides in relevant part: "No person may be prosecuted for any offense, other than an offense set forth in subsection (a) or (b) of this section, except within one year next after the offense has been committed."

The reckless driving charge did not encompass either subsection (a) or (b) of § 54-193; thus, the one year statute of limitations set forth in subsection (c) was applicable.

[13] In the amended information dated May 29, 2012, the state revised the § 14-227a charge to charge the defendant specifically with violating subsection (a) (2) of the statute for operating his police cruiser while having a blood alcohol content higher than 0.08 percent. In this appeal, the defendant has not made a constitutional notice challenge that the original information charging him simply with § 14-227a, which identified no specific subsection, was insufficiently precise such that he was unable to defend against it.

[14] The defendant's reliance on *State* v. *Jennings*, supra, 101 Conn. App. 810, is misplaced. In that case, the defendant originally was charged with

stalking "on or about September 24, 2004." (Internal quotation marks omitted.) Id., 820. After the statute of limitations had passed, the state added a second stalking charge that was based on an incident that allegedly occurred "on or about September 20, 2004." (Internal quotation marks omitted.) Id. Thus, in that case, the defendant was called upon to answer for conduct arising from a wholly separate incident. This court held that the second charge was impermissible. We specified that because the second stalking charge "would double the possible maximum penalty, the addition of second count impermissibly would broaden the charges against the defendant by exposing him to a potentially greater sentence." Id.

In the present case, unlike in *Jennings*, the reckless driving charge arose from the exact incident as the charged violation of § 14-227a. Thus, the defendant here had notice, from the outset of the prosecution, that evidence pertaining to the manner in which he drove his cruiser on the night of the accident might be introduced at trial.

[15] We are not persuaded by the defendant's reliance on *State* v. *Golodner*, supra, 305 Conn. 330. In that case, a driver allegedly drove his vehicle at two individuals that were standing next to each other. Id., 336. The driver originally was charged with one count of reckless endangerment, which pertained to only one of the victims. More than one year later, after the statute of limitations passed, the state filed a substitute information in which it added a second reckless endangerment charge, which pertained to the second victim. Id., 355.

In determining that the amended information impermissibly broadened the charges set forth in the original information, the Supreme Court emphasized that the "substitute information was filed relating to *a different victim*." (Emphasis in original.) Id., 358. As a result, the court in *Golodner* concluded that "the defendant had no notice that he was accused of any criminal conduct related to the *new victim*." (Emphasis added.) Id., 359. In the present case, however, there is no concern that the defendant was charged in the amended information with conduct related to a new victim. *Golodner*, thus, is inapposite to the present case.

[16] We are cognizant that, under circumstances wholly different from this case, factual issues are determinative of whether additional charges are precluded by the statute of limitations. See, e.g., *State* v. *Ali*, 233 Conn. 403, 416, 660 A.2d 337 (1995) ("the issue of whether the state executed the warrant within a reasonable period of time was properly a question of fact for the jury"); *State* v. *Parsons*, 28 Conn. App. 91, 96, 612 A.2d 73 (tolling of statute of limitations was based on factual determination as to when offense occurred), cert. denied, 223 Conn. 920, 614 A.2d 829 (1992). In the present case, however, the tolling of the statute of limitations was properly determined by comparing the facts underlying the original and amended informations, which was a question of law properly determined by the court.

─────────────────