******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* A. B.*
(SC 20471)

Robinson, C. J., and McDonald, D'Auria,
Kahn, Ecker and Keller, Js.

*Syllabus*

Pursuant to this court's decision in *State* v. *Crawford* (202 Conn. 443), the issuance of an arrest warrant within the time period prescribed by the applicable criminal statute of limitations commences a prosecution for purposes of satisfying that statute of limitations, so long as the warrant is executed without unreasonable delay.

The state, on the granting of permission, appealed from the trial court's dismissal of an information charging the defendant with possession of child pornography in the first degree. In 2009, the police executed a search warrant at the defendant's residence and seized two of his computers. Thereafter, the defendant signed a sworn statement in which he admitted to possessing child pornography. The defendant was not arrested at that time but was informed by the police that he would be arrested as soon as a forensic examination of his computers was completed. In 2011, the defendant moved to California. In 2013, after the state forensic laboratory issued a report confirming the presence of child pornography on the computers, and after the police confirmed the defendant's address in California, an arrest warrant for the defendant was issued. Between 2009 and 2018, the police, despite having the defendant's cell phone number, never attempted to communicate with the defendant about the status of his case. In 2018, nearly five years after the warrant was issued and more than three years after the applicable statute of limitations ((Rev. to 2009) § 54-193 (b)) purportedly expired, the defendant was arrested and charged with possession of child pornography in the first degree. Thereafter, the defendant filed a motion to dismiss the information, claiming that the delay in the execution of the arrest warrant was unreasonable under *Crawford* and, therefore, that his prosecution was time barred. In response, the state argued that, because the defendant had moved to California in 2011, the tolling provision of § 54-193 (c), which extends the time within which an information may be brought with respect to a person who fled from and resided outside of the state after the commission of the offense, tolled the limitation period within which the warrant could be executed. In granting the defendant's motion to dismiss, the trial court concluded that the tolling provision was inapplicable because the arrest warrant was issued within the limitation period, the defendant had not fled the state within the meaning of the tolling provision, the defendant met his burden of demonstrating his availability for arrest, and the state failed to meet its burden of demonstrating that the nearly five year delay in the warrant's execution was not unreasonable under *Crawford*. On appeal, the state, conceding that the five year delay in the execution of the arrest warrant was unreasonable, claimed that the trial court nevertheless incorrectly concluded that the tolling provision of § 54-193 (c) was inapplicable in light of the fact that the arrest warrant was issued within the limitation period. *Held* that the trial court correctly concluded that the tolling provision of § 54-193 (c) was inapplicable, as that provision tolls the limitation period solely with respect to the time within which a prosecution may be brought and does not purport to address prosecutions, such as the present one, that have already been brought, at which point there is no need for tolling because the statute of limitations has already been satisfied; moreover, contrary to the state's assertion that this court's interpretation of § 54-193 (c) penalizes it for obtaining an arrest warrant within the limitation period, this court's case law indicates that, so long as the warrant is executed without unreasonable delay, the state can continue to prosecute the defendant as soon as it is able to locate and arrest him.

Argued April 29—officially released October 1, 2021**

*Procedural History*

Information charging the defendant with the crime of possession of child pornography in the first degree, brought to the Superior Court in the judicial district of Ansonia-Milford, where the court, *Wilkerson Brillant, J.*, granted the defendant's motion to dismiss the information, and, on the granting of permission, the state appealed; thereafter, the court, *Wilkerson Brillant, J.*, granted the state's motion for reargument but denied the relief requested therein, and the state filed an amended appeal. *Affirmed.*

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *Margaret E. Kelley*, state's attorney, and *Matthew Kalthoff*, assistant state's attorney, for the appellant (state).

*Andrew P. O'Shea*, for the appellee (defendant).

*Opinion*

KELLER, J. In *State* v. *Crawford*, 202 Conn. 443, 521 A.2d 1034 (1987), this court held that the issuance of an arrest warrant within the limitation period set forth in General Statutes (Rev. to 1983) § 54-193 (b) commences a prosecution for purposes of satisfying that statute of limitations, so long as the warrant is executed without unreasonable delay. Id., 450–51. The defendant, A. B., was charged with possession of child pornography in the first degree in violation of General Statutes (Rev. to 2009) § 53a-196d and was arrested pursuant to a warrant on or about March 16, 2018, nearly five years after the warrant was issued and more than three years after the applicable five year statute of limitations had expired. See General Statutes (Rev. to 2009) § 54-193 (b).[1] The defendant filed a motion to dismiss the information, arguing that, under *Crawford*, the delay in the warrant's execution was unreasonable and, therefore, that the prosecution was time barred. The state responded that, because the defendant had moved to California in 2011, § 54-193 (c)[2] tolled the limitation period within which the warrant could be executed. The trial court rejected the state's argument, concluding that the tolling provision of § 54-193 (c) was inapplicable once the warrant was issued within the limitation period set forth in § 54-193 (b) and that the nearly five year delay in the warrant's execution was unreasonable under *Crawford*. Accordingly, the trial court granted the defendant's motion to dismiss. On appeal,[3] the state claims that the trial court incorrectly concluded that the statute of limitations was not tolled by § 54-193 (c). We disagree and, accordingly, affirm the decision of the trial court.

The following facts, as found by the trial court, and procedural history are relevant to our resolution of this appeal. On December 22, 2009, the Ansonia police executed a search warrant on the defendant's Ansonia residence. During the search, the police seized two of the defendant's computers and related electronics equipment. The defendant was aware that child pornography was the subject of the search and cooperated with the police by providing them with the passwords to his computers. Afterward, he voluntarily drove himself to police headquarters to be interviewed by Detective Gerald Tenney. During the interview, the defendant signed a sworn statement in which he admitted to possessing child pornography on his computers. Although the defendant was not arrested at that time, Detective Tenney informed him that an arrest warrant would be forthcoming as soon as a forensic examination of his computers was completed.

One and one-half years went by, during which the defendant did not hear back from Detective Tenney or anyone else from the Ansonia Police Department. On August 30, 2011, the defendant moved to Huntington Beach, California, where he lived until his arrest on or

about March 16, 2018. While in California, the defendant resided at a single address, which was listed on his federal and state tax returns, on his California Department of Motor Vehicles records and on all of his bills. The defendant also maintained a Facebook account in his own name and posted accurate information about himself on that website. Between 2010 and 2013, Detective Tenney diligently checked on the status of the forensic laboratory's examination of the defendant's computers. On April 15, 2013, the forensic laboratory issued a report confirming the presence of child pornography on the computers. Shortly thereafter, Detective Tenney ascertained the defendant's California address through the LexisNexis law enforcement database and confirmed through the Huntington Beach police that the defendant still resided at that address.

A warrant for the defendant's arrest was issued on May 22, 2013, charging him with possession of child pornography in the first degree. Although Detective Tenney had requested that the warrant be extraditable, it was not authorized as such. Despite having the defendant's cell phone number, Detective Tenney never attempted to contact the defendant to inform him about the arrest warrant. Indeed, between 2009 and 2018, the Ansonia police never once attempted to communicate with the defendant about the status of his case. In September, 2016, Detective Tenney retired from the Ansonia Police Department. At the time of his retirement, no other officer had been assigned to work on the defendant's case.

In early 2018, a clerk of the Superior Court in the judicial district of Ansonia-Milford contacted Lieutenant Wayne Williams of the Ansonia Police Department to inquire about the status of the defendant's case and open arrest warrant. At that time, Lieutenant Williams requested and received permission from the state's attorney's office to extradite the defendant from California. On or about March 16, 2018, the defendant was arrested by the Huntington Beach police, posted bail, and was released with the understanding that he would organize his affairs and return to Connecticut to turn himself in to the Ansonia police, which he did on April 17, 2018. In light of the defendant's cooperation, no extradition proceedings were needed or conducted.

On December 18, 2018, the defendant filed a motion to dismiss the information, claiming that his prosecution was barred by the five year statute of limitations set forth in § 54-193 (b). The defendant argued that, although the arrest warrant was issued within the limitation period, the nearly five year delay in its execution was unreasonable under *Crawford*. The state opposed the motion, arguing that, because the defendant had moved to California prior to the issuance of the warrant, the defendant could not meet his burden of proving that he was available for arrest, as required by *Crawford*.

Alternatively, the state argued, citing *State* v. *Ward*, 306 Conn. 698, 52 A.3d 591 (2012), that the statute of limitations was tolled under § 54-193 (c) because the defendant "fled" Connecticut in 2011.

An evidentiary hearing on the defendant's motion to dismiss was held over a period of two days, after which the trial court granted the defendant's motion. In so doing, the court rejected the state's contention that, even though the arrest warrant was issued within the limitation period, § 54-193 (c) had tolled the statute of limitations within which the police were required to execute the warrant because of the defendant's relocation to California in 2011. The trial court concluded that § 54-193 (c) applies only to toll the limitation period within which a prosecution may be brought, not the time period within which a defendant must be notified of a prosecution that has already been initiated. Accordingly, the court considered whether the nearly five year delay in the execution of the arrest warrant by the Ansonia Police Department was reasonable under *Crawford*. In considering this question, the court explained that, in *State* v. *Swebilius*, 325 Conn. 793, 159 A.3d 1099 (2017), this court held that, once a defendant who has raised a statute of limitations defense "presents evidence of his availability for arrest during the limitation period, the burden shifts to the state to present evidence of its due diligence in executing the warrant." Id., 803. The trial court further explained that, under our case law, a defendant can demonstrate his availability for arrest by presenting evidence "suggest[ing] that he was not elusive, was available, and was readily approachable" during the relevant time period. Applying this standard, the court concluded that the defendant had met his burden. Specifically, the court found that, "although the defendant was residing out of state, the state was aware of his whereabouts . . . and could have easily executed the warrant within the [limitation] period or sooner than it did in 2018," that, "[a]fter the search of the defendant's home, the defendant voluntarily went to the police station and provided a sworn statement to the police in which he admitted to possessing child pornography," and that "[t]he police had the defendant's cell phone number and knew where he lived both in Connecticut and subsequently in California."

In light of its determination that the defendant had met his burden of demonstrating his availability for arrest, the trial court considered whether the state had met its burden of proving that the delay by the Ansonia police in executing the arrest warrant was not unreasonable. The trial court concluded that the state had not met its burden. Indeed, the court noted that the state had failed to present any evidence with respect to this issue. In light of the foregoing, the court concluded that the delay by the police in executing the warrant was unreasonable and granted the defendant's motion to

dismiss.

Thereafter, the state filed a motion for reargument in which it claimed that the trial court incorrectly had determined that the defendant's motion to dismiss was controlled by *Crawford* rather than the tolling provision of § 54-193 (c), as interpreted by this court in *Ward.* The state further sought to address the significance of the Appellate Court's then recent decision in *Roger B.* v. *Commissioner of Correction*, 190 Conn. App. 817, 212 A.3d 693, cert. denied, 333 Conn. 929, 218 A.3d 70 (2019), and cert. denied, 333 Conn. 929, 218 A.3d 71 (2019),[4] which the defendant had filed with the trial court as supplemental authority following the hearing on his motion to dismiss. In *Roger B.*, the Appellate Court held that, when an arrest warrant is issued within the applicable limitation period, the statute of limitations is satisfied such that the tolling provision becomes irrelevant, and the only question is whether the warrant was executed without unreasonable delay. Id., 838. In its motion for reargument, the state claimed that *Roger B.* and the trial court's ruling on the defendant's motion to dismiss were inconsistent with this court's interpretation of § 54-193 (c) in *Ward.* The trial court disagreed and reaffirmed its ruling granting the defendant's motion to dismiss. The trial court further concluded that, even if § 54-193 (c) were applicable, it would not change the outcome of this case because the defendant had not fled the state within the meaning of that statute, and, therefore, the statute's tolling provision was never triggered.

On appeal, the state does not challenge the trial court's determination that the nearly five year delay in the execution of the arrest warrant by the Ansonia Police Department was unreasonable and, therefore, that the prosecution was time barred under *Crawford.* The state concedes that the delay was not reasonable. The state contends, however, that the trial court incorrectly determined that, because the arrest warrant was issued within the limitation period, the tolling provision of § 54-193 (c) was inapplicable. The state maintains that § 54-193 (c) is not only applicable but that, under *Ward*, its tolling provision was triggered when the defendant left the state for California, thereby "[giving] the state . . . an indefinite period to issue and execute the warrant . . . ." We disagree.

"Because a motion to dismiss effectively challenges the jurisdiction of the court, asserting that the state, as a matter of law and fact, cannot state a proper cause of action against the defendant, our review of the court's legal conclusions and resulting denial of the defendant's motion to dismiss is de novo." (Internal quotation marks omitted.) *State* v. *Kallberg*, 326 Conn. 1, 12, 160 A.3d 1034 (2017). Whether the trial court correctly determined that § 54-193 (c) is inapplicable to the present case presents a question of statutory interpretation over

which we also exercise plenary review.[5] See, e.g., *State v. Ward*, supra, 306 Conn. 707. We previously have explained that "§ 54-193, like other criminal statutes of limitation, is remedial in nature. The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity. . . . Indeed, it is because of the remedial nature of criminal statutes of limitation that they are to be liberally interpreted in favor of repose." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Skakel*, 276 Conn. 633, 677, 888 A.2d 985, cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006).

General Statutes (Rev. to 2009) § 54-193 (b) provides in relevant part that "[n]o person may be prosecuted for any offense . . . for which the punishment is or may be imprisonment in excess of one year, except within five years next after the offense has been committed. . . ." General Statutes (Rev. to 2009) § 54-193 (c), in turn, provides that, "[i]f the person against whom an indictment, information or complaint for any of said offenses is brought has fled from and resided out of this state during the period so limited, it may be brought against such person at any time within such period, during which such person resides in this state, after the commission of the offense." In determining whether the Ansonia police were required to execute the arrest warrant without unreasonable delay or whether § 54-193 (c) tolled the limitation period within which the warrant could be executed, we do not write on a blank slate. In *Crawford*, this court considered whether the issuance of an arrest warrant within the limitation period commenced the prosecution for purposes of satisfying[6] the statute of limitations set forth in § 54-193 (b). *State* v. *Crawford*, supra, 202 Conn. 447. The defendant, Ronald L. Crawford, filed a motion to dismiss the charges against him, arguing that they were barred by the applicable one year statute of limitations because the warrant for his arrest, which had been issued approximately two months after the commission of the charged offenses, was not executed until more than one year after the limitation period had expired. Id., 445. The trial court denied his motion, and this court upheld the trial court's ruling, holding that the issuance of an arrest warrant within the limitation period satisfies the statute of limitations. Id., 446, 452. Specifically, we held that, "[w]hen an arrest warrant has been issued,

and the prosecutorial official has promptly delivered it to a proper officer for service, he has done all he can under our existing law to initiate prosecution and to set in motion the machinery that will provide notice to the accused of the charges against him. When the prosecutorial authority has done everything possible within the period of limitation to evidence and effectuate an intent to prosecute, the statute of limitations is [satisfied]." (Footnote omitted.) Id., 450.

We further concluded, however, that "some limit as to when an arrest warrant must be executed after its issuance is necessary in order to prevent the disadvantages to an accused attending stale prosecutions, a primary purpose of statutes of limitation[s]." Id., 450. Thus, we held that, "in order to [satisfy] the statute of limitations, an arrest warrant, when issued within the time limitations of § 54-193 (b), must be executed without unreasonable delay." Id., 450–51. In so concluding, we declined to "adopt a per se approach as to what period of time to execute an arrest warrant is reasonable." Id., 451. Instead, we held that "[a] reasonable period of time is a question of fact that will depend on the circumstances of each case. If the facts indicate that an accused consciously eluded the authorities, or for other reasons was difficult to apprehend, these factors will be considered in determining what time is reasonable. If, on the other hand, the accused did not relocate or take evasive action to avoid apprehension, failure to execute an arrest warrant for even a short period of time might be unreasonable and fail to [satisfy] the statute of limitations."[7] Id.

In reaching our determination in *Crawford*, we noted that "[§ 54-193 (c)], which tolls the statute [of limitations] as to a person who has fled from and resides outside the state after the commission of the offense, simply extends the time within which an 'indictment, information or complaint' may be brought." Id., 450 n.12. We further explained that, although "the issuance of an arrest warrant within the period of limitation might accomplish the same result [i.e., toll the statute of limitations], there may be valid reasons why the prosecuting authority cannot procure an arrest warrant while an accused is absent from the state." Id. Thus, although not essential to our holding in *Crawford*, we interpreted the tolling provision of § 54-193 (c) to apply when a defendant, by fleeing the state, has made the procurement of an arrest warrant within the limitation period impossible. See id., 451. We further explained, however, that the timely issuance of an arrest warrant satisfies the statute of limitations, just as § 54-193 (c) tolls it with respect to the person who has fled the state, so long as any delay in the execution of the warrant is not unreasonable. See id., 450–51.

Subsequently, in *State* v. *Ali*, 233 Conn. 403, 660 A.2d 337 (1995), the defendant, Showkat Ali, claimed that

the trial court improperly failed to instruct the jury to consider whether one of the charges against him was barred by the applicable statute of limitations. Id., 409. Ali, a resident of New York, was accused of kidnapping, sexually assaulting, and threatening his former wife in her New London home on July 9, 1991. Id., 405–409. After the victim reported the incident to the New London police, the police secured a warrant for Ali's arrest on July 19, 1991, well within the one year limitation period for the crime of threatening. Id., 409–10. Ali was not arrested pursuant to that warrant, however, for nearly two years, at which time New York authorities contacted the New London police and told them that Ali was in custody and willing to waive extradition. Id., 410. The New London police determined, however, that the July 19, 1991 arrest warrant must be vacated because they could not locate the victim, from whom they had failed to take a statement. Id. As a result, a second arrest warrant was secured on August 19, 1993, and executed on August 23, 1993. Id., 411.

At trial, Ali filed a request to charge, asking that the jury be allowed to consider his affirmative defense that the threatening count was barred by the applicable one year statute of limitations, which the trial court denied. Id. On appeal, this court agreed with Ali that the trial court improperly declined to instruct the jury on his statute of limitations defense because Ali had produced evidence that the police had not acted with due diligence in executing the arrest warrant.[8] Id., 416. In reaching our determination, we rejected the state's argument that "[Ali's] departure from the state [was] dispositive of [his statute of limitations defense]. Rather, we conclude[d] that the outcome [was] controlled by [*Crawford*], [in which] we held that the issuance of an arrest warrant qualifies as a 'prosecution' within the meaning of § 54-193 (b) only if the state executed it without unreasonable delay and that, in determining whether the state executed the warrant without unreasonable delay, the fact finder may consider whether the defendant left the jurisdiction and was difficult to apprehend."[9] Id., 412.

In *State* v. *Ward*, supra, 306 Conn. 698, this court concluded that the trial court correctly determined that the limitation period set forth in § 54-193 (b) was tolled pursuant to § 54-193 (c) because the defendant, James T. Ward, had "fled" the state by returning to his home in Massachusetts after committing the charged offense. Id., 706, 713–14. Ward was convicted of sexually assaulting the victim inside her Killingly home in November, 1988. Id., 700–701. After the assault, Ward immediately returned to his home in Massachusetts. See id., 703–704. Unable to identify the perpetrator of the assault, the state police closed its investigation in March, 1990. Id., 704. Subsequently, in June, 2005, it reopened the investigation after receiving a tip that Ward was the person who committed the offense. Id.

After DNA testing confirmed that Ward was the perpetrator; id.; the state police obtained and executed a warrant for his arrest in August, 2007, almost nineteen years after he committed the offense and fourteen years beyond the applicable five year statute of limitations. Id., 705. Ward filed a motion to dismiss the sexual assault charge on the ground that it was barred by the statute of limitations. Id. The trial court denied the motion, concluding that "§ 54-193 (c) operated to toll the statute of limitations because the state had proven that [Ward] fled from the state immediately after the commission of the crime and that he resided outside of the state during the period of limitation." Id.

Following his conviction, Ward appealed to this court, claiming that the trial court improperly denied his motion to dismiss because the state had failed to present evidence that he was aware of a criminal investigation against him and that he had fled the state to avoid prosecution. Id., 710. The state argued in response that the term "fled" in § 54-193 (c) does not require an intent to avoid arrest or prosecution. Id. Because the term "fled" was not defined in the statute, we consulted a dictionary definition of the word "flee," which "is defined alternatively as 'to run away often from danger of evil' and 'to hurry toward a place of security . . . .'" Id., 709. We observed that the "common usage of the term fled connotes a meaning that a defendant is running away from something. The term fled as we have ascertained from the dictionary definition means to run away from danger—in the context of § 54-193 (c), we understand this term to mean investigation—and [to] hurry toward a place of security—in the context of § 54-193 (c), we understand this term to mean outside of the jurisdiction." Id., 711. We further noted that the legislature's failure to include language in § 54-193 (c) requiring that a defendant must have fled for the purpose of avoiding prosecution supported the conclusion that no such intent was required under the statute. See id., 710. Because, when Ward returned home to Massachusetts, he had a reason to believe that an investigation would ensue into his criminal conduct at the victim's home, we agreed with the trial court that he had fled the state within the meaning of § 54-193 (c). See id., 711. Specifically, we concluded that "§ 54-193 (c) may toll the statute of limitations when a defendant absents himself from the jurisdiction with reason to believe that an investigation may ensue as the result of his actions." Id.

Most recently, in *State* v. *Swebilius*, supra, 325 Conn. 793, we were asked to determine whether a delay in the execution of an arrest warrant could be reasonable as a matter of law. In that case, the defendant, Jon Swebilius, "was charged with possession of child pornography in the first degree . . . and was arrested thirty-two days after the issuance of [the] warrant for his arrest and thirteen days after the expiration of the

applicable five year statute of limitations . . . . [Swebilius] moved to dismiss the charge on the ground that the prosecution was barred by the statute of limitations because . . . the delay in the execution of the warrant was unreasonable. The trial court denied the motion, and [Swebilius] appealed to the Appellate Court, which affirmed the judgment of the trial court, concluding that the delay was reasonable as a matter of law under *Crawford* and its progeny." (Footnote omitted.) Id., 796. We reversed the Appellate Court's judgment; id., 815; concluding that it "incorrectly determined that some delays in the execution of an arrest warrant may be so brief as to be reasonable as a matter of law for the purpose of tolling the applicable statute of limitations." Id., 801. Such a conclusion, we explained, was inconsistent "with this court's observation in *Crawford* that, '[i]f . . . the accused [does] not relocate or take evasive action to avoid apprehension, failure to execute an arrest warrant for even a short period of time might be unreasonable and fail to toll the statute of limitations.' " Id., 807, quoting *State* v. *Crawford*, supra, 202 Conn. 451.

We further observed that "a rule making some delays reasonable without any showing of due diligence is inconsistent with the purposes of statutes of limitations. As we have observed, such statutes serve several functions, among them '(1) prevent[ing] the unexpected enforcement of stale and fraudulent claims by allowing persons after the lapse of a reasonable time, to plan their affairs with a reasonable degree of certainty, free from the disruptive burden of protracted and unknown potential liability, and (2) . . . aid[ing] in the search for truth that may be impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents or otherwise.' . . . *St. Paul Travelers Cos.* v. *Kuehl*, 299 Conn. 800, 809–10, 12 A.3d 852 (2011); see also [1 A.L.I. Model Penal Code and Commentaries (1985) § 1.06, comment, p. 86]. It is precisely because of these concerns that we require statutes of limitations to be strictly construed in favor of the accused. . . . Thus, although the precise length of any statutory limitation period is necessarily somewhat arbitrary, such statutes nevertheless reflect the will of the legislature that, at least in the absence of special or compelling circumstances, the limitation period shall serve as a firm bar to prosecution. See, e.g., [*State* v. *Whiteman*, 204 Conn. 98, 100, 526 A.2d 869 (1987)] (prosecution for sexual assault was barred when warrant was issued ten days after expiration of statute of limitations). It is also well established that statutes of limitations are not primarily concerned with demonstrable prejudice. . . . Instead, after the passage of the specified period of time, evidence of prejudice becomes less important than the virtues of predictability, repose, and societal stability. See, e.g., *United States* v. *Marion*, 404 U.S. 307, 322, 92 S. Ct. 455, 30 L.

Ed. 2d 468 (1971) ('[S]tatutes [of limitations] represent legislative assessments of relative interests of the [s]tate and the defendant in administering and receiving justice; they are made for the repose of society and the protection of those who may [during the limitation period] . . . have lost their means of [defense]. . . . These statutes provide predictability by specifying a limit beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced.' . . .) . . . ." (Citations omitted; footnote omitted.) *State* v. *Swebilius*, supra, 325 Conn. 812–814.

In reaching our determination, we explained that the burden shifting approach adopted by the Appellate Court for determining whether, under *Crawford*, an arrest warrant was executed without unreasonable delay "encourages diligence by law enforcement officials in providing timely notice of charges to defendants. Although we decline[d] to specify the precise actions that they must undertake to serve a warrant with due diligence, or the precise timeline within which they must act, [we held that] such officials must present some credible and persuasive factual basis for inaction when they fail to observe the statute of limitations. This requirement is consistent with the principle that, when a judicial doctrine, 'for all practical purposes, extends the statute [of limitations] beyond its stated term,' that doctrine 'should be applied in only limited circumstances . . . .' " Id., 808–809, citing *Toussie* v. *United States*, 397 U.S. 112, 115, 90 S. Ct. 858, 25 L. Ed. 2d 156 (1970).

Finally, we noted that it was "unlikely . . . that the legislature ever intended to allow the statute of limitations to be tolled simply by the issuance of a warrant without further efforts to apprise the defendant of the warrant's existence. Doing so would contravene the policy of notice fundamental to statutes of limitations." *State* v. *Swebilius*, supra, 325 Conn. 809 n.11. Thus, we concluded that "*Crawford* is more properly viewed as an exception to the rule that a defendant must have notice of prosecution within the limitation period. In that sense, it benefits the state by extending the period of limitation beyond its stated term and must be applied judiciously." Id.

Against this backdrop, we turn to the state's claim that the trial court incorrectly concluded that, because a warrant for the defendant's arrest was issued within the limitation period, the tolling provision of § 54-193 (c) was inapplicable such that, under *Crawford*, the Ansonia police were required to execute the warrant without unreasonable delay. The state argues that, although this court and the Appellate Court consistently have analyzed statute of limitations cases involving timely issued arrest warrants using the *Crawford* framework, including cases in which the defendant left the state before or after the warrant was issued, in none

of those cases did the state specifically claim that § 54-193 (c) had tolled the statute of limitations. Thus, according to the state, these cases "can hardly be read as an affirmative holding that, once warrants are issued, they must be served promptly even on those who fled the jurisdiction." The state further contends that, "in creating the . . . tolling exception to [§ 54-193 (b), the legislature] intended to toll the statute [of limitations] when suspects flee the state, regardless of whether a warrant has issued." Specifically, the state argues that, "given the lack of any reference in [the] tolling provision to issuance or execution of warrants, its plain language mandates that limitation periods be tolled regardless of the existence or status of any arrest warrant." Finally, the state contends that, when the defendant left Connecticut for California in 2011, he "fled" the state within the meaning of § 54-193 (c), as interpreted by this court in *Ward*, such that the statute of limitations was tolled until the defendant's return in 2018.

The defendant responds that the trial court properly utilized the *Crawford* framework in concluding that the nearly five year delay in the execution of the arrest warrant by the Ansonia police was unreasonable, and, therefore, the defendant's prosecution was barred by the statute of limitations. The defendant contends that, although § 54-193 (c) tolls the limitation period within which a prosecution may be commenced, *Crawford* and its progeny firmly establish that, once an arrest warrant has been issued, "the state must serve it without undue delay." We agree with the defendant.

By its express terms, § 54-193 (c) extends the time within which "an indictment, information or complaint[10] . . . may be brought" when a defendant has "fled from and resided out of this state . . . after the commission of the offense." (Footnote added.) Within the parlance of the law, an "action brought" is "[a]n action commenced." Ballentine's Law Dictionary (3d Ed. 1969) p. 19. Although § 54-193 (c) does not expressly refer to the issuance or execution of warrants as the point at which an action is "brought" for purposes of satisfying the time limits imposed under § 54-193 (b), this court has long ascribed that meaning to the word when applying the provisions of that statute. See, e.g., *State* v. *Ali*, supra, 233 Conn 416 ("the issuance of an arrest warrant is sufficient 'prosecution' to satisfy the statute of limitations . . . if the warrant is executed with due diligence"); *State* v. *Crawford*, supra, 202 Conn. 448 ("it is generally held that the prosecution is commenced, and the statute [satisfied], at the time a complaint is laid before a magistrate and a warrant of arrest is issued"). In light of the foregoing, we conclude that § 54-193 (c) tolls the limitation period solely with respect to the time within which a prosecution may be brought and does not purport to address prosecutions that have *already* been brought, at which point, as the Appellate Court aptly determined in *Roger B.* v. *Commissioner*

*of Correction*, supra, 190 Conn. App. 838, there is no need for tolling because the statute of limitations has already been satisfied. See, e.g., *State* v. *Ali*, supra, 233 Conn. 413 n.8 (distinguishing satisfying statute of limitations from tolling statute of limitations and noting that "[o]nly § 54-193 (c) specifically concerns the tolling of the statute of limitations").

Our interpretation is consistent with our statement in *Ward* that § 54-193 (c) was intended to toll the statute of limitations when an offender has fled the state and, as a result, made an investigation into his crimes—and hence the timely procurement of an arrest warrant—impracticable if not impossible.[11] See *State* v. *Ward*, supra, 306 Conn. 712 (§ 54-193 (c) addresses "the practical problems that Connecticut police officers face in identifying and apprehending nonresident criminals" because "[i]nvestigation of crimes is easier for law enforcement officials when people central to the incident, and who may have vital information, are located within the state" (internal quotation marks omitted)); see also *United States* v. *Marshall*, 856 F.2d 896, 899–900 (7th Cir. 1988) ("[T]he statute of limitations, along with its companion tolling provisions, is designed to balance two competing interests. The statutes are intended to allow the government sufficient time to investigate and prosecute criminal conduct, while shielding the defendant from the burden and jeopardy of confronting distant offenses. . . . The tolling statute reflects the [legislature's] belief that [when] the defendant impedes the discovery and prosecution of his criminal conduct by fleeing from justice, his right to avoid prosecution for distant offenses is diminished while the government's need for additional discovery time is strengthened." (Citations omitted; internal quotation marks omitted.)).

We have long held that the primary purpose of statutes of limitations is to "encourag[e] law enforcement officials promptly to investigate suspected criminal activity"; (internal quotation marks omitted) *State* v. *Ward*, supra, 306 Conn. 712; so as "to ensure that a defendant receives notice, within a prescribed time, of the acts with which he is charged . . . ." (Internal quotation marks omitted.) *State* v. *Almeda*, 211 Conn. 441, 446, 560 A.2d 389 (1989). When law enforcement is prevented from solving a crime because the perpetrator has fled from and resided outside of the state, the legislature has determined that the state should be allowed additional time within which to identify and bring to justice the offender. When, however, an offender's absence from the state poses no impediment to an investigation and the police are able to procure an arrest warrant within the time proscribed by § 54-193 (c), we can perceive no reason, and the state has identified none, why the state should not be required to promptly notify the defendant of the crimes with which he is charged. Such notice is the raison d'être of statutes of

limitations. See, e.g., *State* v. *Swebilius*, supra, 325 Conn. 809 n.11 ("policy of notice [is] fundamental to statutes of limitations"); *State* v. *Almeda*, supra, 211 Conn. 446 ("[a]t the core of the limitations doctrine is notice to the defendant").

The state argues nonetheless that our interpretation of § 54-193 (c) penalizes it for obtaining a warrant because, "once warrants [are] issue[d], they must be served promptly under *Crawford*, regardless of whether the suspect [has] fled the state." We disagree. This court stated unequivocally in *Crawford* that "[a]n accused should *not* be rewarded, [in the absence of] evidence of a lack of due diligence on the part of the officer charged with executing the warrant, for managing to avoid apprehension to a point in time beyond the period of limitation." (Emphasis added.) *State* v. *Crawford*, supra, 202 Conn. 450. Thus, we adopted what we believed to be "the sensible approach of the [M]odel [P]enal [C]ode," which requires that arrest warrants be served "without unreasonable delay." Id., 450–51. In so doing, we emphasized that "what period of time to execute an arrest warrant is reasonable . . . *is a question of fact that will depend on the circumstances of each case. If the facts indicate that an accused consciously eluded the authorities, or for other reasons was difficult to apprehend, these factors will be considered in determining what time is reasonable.*" (Emphasis added.) Id., 451. Applying this standard, our courts routinely have determined that delays in the execution of an arrest warrant were reasonable when the defendant's departure from the state prevented the prompt execution of a warrant. See, e.g., *State* v. *Swebilius*, supra, 325 Conn. 811 n.14 ("delays that have been deemed to be reasonable [under *Crawford*] have been as long as fourteen years [when defendant left state]"); *Roger B.* v. *Commissioner of Correction*, supra, 190 Conn. App. 845 (citing cases and noting that "Connecticut [courts] have determined that a delay in executing an arrest warrant is not unreasonable when a defendant has relocated outside of the state" (internal quotation marks omitted)); *State* v. *Derks*, 155 Conn. App. 87, 89–90, 95, 108 A.3d 1157 (delay of nearly twelve years was reasonable under *Crawford* when defendant moved out of state and was difficult to locate), cert. denied, 315 Conn. 930, 110 A.3d 432 (2015); *State* v. *Henriquez*, Superior Court, judicial district of New Haven, Docket Nos. CR-09-96308 and CR-09-96309 (February 4, 2011) (fourteen year delay in serving arrest warrant was not unreasonable under *Crawford* when defendant left state within days of committing offense and lived under assumed name, making it difficult for police to apprehend him).

Thus, our case law belies the state's assertion that obtaining an arrest warrant within the limitation period set by the legislature places the state at a disadvantage. So long as the warrant is executed without unreason-

able delay—the state makes no claim and presented no evidence in the trial court that the delay in the present case was reasonable—the state can continue to prosecute the defendant as soon as it is able to locate and arrest him. What the state cannot do under our case law, however, is what the state did in the present case—obtain an arrest warrant within the limitation period and then wait nearly five years before attempting to serve it, knowing all along the defendant's precise whereabouts. See, e.g., *State* v. *Swebilius*, supra, 325 Conn. 814 (statute of limitations should not be tolled "[when] the warrant is issued but no effort is made to arrest a defendant whose whereabouts are known" (internal quotation marks omitted)); *State* v. *Woodtke*, 130 Conn. App. 734, 744, 25 A.3d 699 (2011) ("[t]he mere fact that a police department is 'a very busy urban police department' is not enough for it to avoid its obligation to serve . . . warrants in a timely manner"). Such dilatory practices are antithetical to the fundamental policies furthered by our criminal statutes of limitations.[12]

The decision of the trial court is affirmed.

In this opinion the other justices concurred.

* Following notice to the public and a hearing, the Appellate Court granted the defendant's motion to seal the defendant's name. See Practice Book §§ 77-3 and 77-4.

** October 1, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] General Statutes (Rev. to 2009) § 54-193 (b) provides in relevant part: "No person may be prosecuted for any offense . . . for which the punishment is or may be imprisonment in excess of one year, except within five years next after the offense has been committed. . . ."

In the interest of simplicity, hereinafter, unless otherwise indicated, all references to § 54-193 in this opinion are to the 2009 revision of the statute.

[2] General Statutes (Rev. to 2009) § 54-193 (c) provides: "If the person against whom an indictment, information or complaint for any of said offenses is brought has fled from and resided out of this state during the period so limited, it may be brought against such person at any time within such period, during which such person resides in this state, after the commission of the offense."

[3] The state appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[4] In *Roger B.*, the petitioner appealed from the judgment denying his petition for a writ of habeas corpus, alleging ineffective assistance of counsel on the basis of his trial counsel's failure to assert a statute of limitations defense. *Roger B.* v. *Commissioner of Correction*, supra, 190 Conn. App. 819–20. The habeas court denied the petition, reasoning, in part, that the statute of limitations was tolled under the tolling provision as a result of the petitioner's relocation outside of Connecticut. Id., 821–22. The Appellate Court agreed with the petitioner's claim on appeal that the habeas court incorrectly had concluded that the statute of limitations was tolled. Id., 831. The Appellate Court determined that, "[b]ecause the [arrest] warrant was issued within the limitation period, [the tolling provision] became irrelevant. The only question that remained was whether the warrant was executed without unreasonable delay." Id., 838.

[5] "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual

evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and [common-law] principles governing the same general subject matter . . . .” (Internal quotation marks omitted.) *Fedus* v. *Planning & Zoning Commission*, 278 Conn. 751, 756, 900 A.2d 1 (2006).

[6] In *Crawford*, this court used the term “tolled,” and other forms of the verb “toll,” rather than “satisfied,” to describe the state’s meeting its obligation under § 54-193 (b) to have “prosecuted” a crime within the relevant limitation period. See, e.g., *State* v. *Crawford*, supra, 202 Conn. 447. In *State* v. *Ali*, 233 Conn. 403, 660 A.2d 337 (1995), we explained that “satisfie[d]” is the appropriate term to describe the state’s meeting such obligation under § 54-193 (b) and that “[o]nly § 54-193 (c) specifically concerns the tolling of the statute of limitations.” Id., 413 n.8.

[7] Because the statute of limitations is an affirmative defense and Crawford had failed to prove by a preponderance of evidence that the warrant was not served with due diligence, this court affirmed the trial court’s denial of Crawford’s motion to dismiss. *State* v. *Crawford*, supra, 202 Conn. 451–52. In *State* v. *Swebilius*, supra, 325 Conn. 793, however, we clarified that, in asserting a statute of limitations defense, a defendant need only demonstrate that he was not elusive, was available, and was readily approachable during the limitation period. Id., 809. We stated that, “once a defendant has demonstrated his availability and nonelusiveness during the statutory period, the state must then demonstrate the reasonableness of any delay between the issuance and the service of an arrest warrant, at least when service occurs after the expiration of the limitation period.” Id. We further stated that “the reasonableness determination must be made on a case-by-case basis in light of the particular facts and circumstances presented.” Id., 809–10.

[8] This court agreed with the state that “the first and second warrants were essentially the same and that the issuance of the first warrant, within one year of the offense, satisfied [the statute of limitations].” *State* v. *Ali*, supra, 233 Conn. 412 n.7.

[9] Although we did not expressly say so in *Ali*, a review of the record and briefs in that case indicates that the state relied on § 54-193 (c) as support for its assertion that Ali’s departure from the state had tolled the statute of limitations within which the police were required to execute the arrest warrant.

[10] An “indictment, information or complaint” are the formal means by which prosecutions are, or in the past were, brought against a defendant. General Statutes (Rev. to 2009) § 54-193 (c). As we explained in *Crawford*, “General Statutes § 54-46 previously required an indictment for crimes punishable by death or life imprisonment. This provision, however, was amended by No. 83-210 of the 1983 Public Acts. All felonies in Connecticut are now prosecuted by information and misdemeanors by information or complaint.” *State* v. *Crawford*, supra, 202 Conn. 448 n.9; see also Practice Book § 36-11.

[11] We note that the statutory language at issue dates back to at least 1821; see General Statutes (1821 Rev.), tit. 59, § 11; long before the advent of modern forensic science, the Internet and jet travel, when a person’s flight from the state after committing an offense likely would have ended any hope of solving the crime.

[12] The state contends that, under our decision, it would have been better off if it had not obtained an arrest warrant within the limitation period. Specifically, the state argues that, “had [the] police not sought a warrant until the defendant returned to Connecticut, [this court’s decision in *Ward*]—bizarrely—[would have] allow[ed] [his] prosecution because the defendant ‘fled from and resided out of this state.’ ” Because we conclude that § 54-193 (c) is inapplicable under the circumstances of this case, we need not address this argument except to say that we are dismayed by it. Although it is not our role to advise the state on such matters, it concerns us that something this court might have said in *Ward* would cause the state to think that, despite having enjoyed the defendant’s full cooperation and knowing exactly how to locate him from 2009 onward, the state would have been better off to delay the defendant’s prosecution for years merely because he relocated out of state. To the extent that this court’s decision in *Ward* can be read to countenance any such tactics on the part of the state, it certainly was not our intention to convey that impression. *Ward* involved the paradigmatic case of an offender fleeing the state immediately after committing a serious felony. *State* v. *Ward*, supra, 306 Conn. 706. His identity was not revealed until almost nineteen years later through a fortuitous tip later

confirmed by DNA testing. Id., 704. The sole issue before this court was whether, *under the facts of that case*, the defendant had "fled" the state within the meaning of § 54-193 (c) such as to trigger the tolling provision. See, e.g., *Fedus* v. *Planning & Zoning Commission*, 278 Conn. 751, 756, 900 A.2d 1 (2006) (in construing a statute, "we seek to determine . . . the meaning of the statutory language *as applied to the facts of* [*the*] *case, including the question of whether the language actually does apply*" (emphasis added; internal quotation marks omitted). We were not required to determine whether a person who signed a sworn confession and then two years later relocated outside of the state, after fully cooperating with the police and providing them with a valid cell phone number at which he could be reached, and who took no evasive actions to avoid detection, also could be deemed to have fled the state within the meaning of the statute. To the extent that the state reads *Ward* as having resolved that question, it is quite mistaken.

————————————————————